20

*NOT FOR PUBLICATION*

```
┌─────────────────────────────────┐
│            FILED                │
│  ᒷᑐᔕ                            │
│         JUL 18 2014             │
│  UNITED STATES BANKRUPTCY COURT │
│   EASTERN DISTRICT OF CALIFORNIA│
└─────────────────────────────────┘
```

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 12-10802-A-7 |
| Terence Edward Moore, | |
| Debtor. | |
| _____/ | |
| Timothy E. Moore, individually and as trustee of the Edward C. Moore and Marie Moore Family Trust dated November 12, 1992, | Adv. No. 12-01135-A |
| Plaintiff, | |
| vs. | |
| Terence Edward Moore, | |
| Defendant. | |
| _____/ | |

**MEMORANDUM DECISION**

This is a dispute between brothers over distributions from their father's trust. Acting as trustee, Terence E. Moore distributed a firearm collection to himself but failed to collect an equalizing payment, as required by the terms of the trust, and appropriated trust stock for his own purposes. Successor trustee Timothy E. Moore proceeds under 11 U.S.C. § 523(a)(4) to recover the value of the assets taken plus prejudgment interest and have that debt be excepted from discharge.

**FACTS**

Timothy E. Moore ("Timothy"), Terence E. Moore ("Terence"), and Deborah Moore Houston ("Deborah") are the adult children of Edward C. Moore ("Edward"). Plaintiff Timothy is the successor, and current, trustee of his father's inter vivos trust; defendant Terence is the former trustee. The brothers are estranged. All three children are the beneficiaries of "The Edward C. Moore and Marie Moore Family Trust." Marie Moore ("Marie") was Edward's spouse and the siblings' stepmother. This dispute arose from Terence's actions as trustee.

In 1991, Edward and Marie established an inter vivos trust known as "The Edward C. Moore and Marie Moore Family Trust." The original declaration of trust named trustees in the following order of succession: (1) Edward and/or Marie; (2) the survivor of Edward and Marie; and (3) co-trustees comprised of one of Edward's children and one of Marie's children. The initial tertiary trustees were Terence and Jonna M. Key, Marie's daughter; the successor trustees were Timothy and Vern E. Elston, Marie's son.

As relevant here, the trust had a two-pronged distribution scheme. At Edward's death, all of Edward's firearms were to go to Terence, who was to make a one-third equalizing payment to Timothy and

Deborah each:

> At the time of Edward C. Moore's death, his gun collection
> is to be distributed to his son, Terrence E. Moore.[1] Upon
> distribution of the gun collection, Terrence E. Moore shall
> pay to both Deborah R. Moore and Timothy E. Moore a cash
> settlement equal to one-third (1/3) fair market value of
> the gun collection.

After both settlors passed, the residue of the trust was to be
divided evenly between Edward and Marie's combined six children:

> The Trustee shall apply and distribute equally the net
> income and principal of each of the shares of the resulting
> Trust Estate . . . set aside for the benefit of the
> Settlors' named beneficiaries as follows: 1) Terrence
> E. Moore, settlor Edward C. Moore's son[;] 2) Deborah
> R. Moore, settlor Edward C. Moore's daughter[;] 3) Timothy
> E. Moore, settlor Edward C. Moore's son[;] 4) Jonna M. Key,
> settlor Marie Moore's daughter[;] 5) Richard A. Elston,
> settlor Marie Moore's son[; and] 6) Vern E. Elston, settlor
> Marie Moore's son[.]

The trust also included an in terrorem clause, which, if
triggered, forfeited a contesting beneficiary's interest and
terminated the contesting beneficiary's status as trustee:

> [I]f any beneficiary hereunder asserts any claim (except a
> legally enforceable debt), statutory election, or other
> right or interest against or in Settlor's estate, Settlor's
> Will, or any properties of this trust, other than pursuant
> to the express terms hereof or of said Will, or directly or
> indirectly contests, disputes, or calls into question,
> before any court, the validity of this instrument or of said
> Will or the validity of any provisions of this instrument or
> of said Will, then, a) Such beneficiary shall thereby
> absolutely forfeit any and all beneficial interests of
> whatsoever kind and nature which such beneficiary might
> otherwise have under this instrument and the interests of
> the other beneficiaries hereunder shall thereupon be
> appropriately and proportionately increased and/or
> advanced, . . . and c) Such claiming, electing, or
> contesting beneficiary, if then acting as a Trustee
> hereunder, shall automatically cease to be a Trustee and
> shall thereafter be ineligible either to select, remove, or

---

[1] In the pleadings and other documents filed in this bankruptcy,
the name "Terence" has been used. However, in the trust, the name
"Terrence" was used.

1    become a Trustee hereunder.

2        Under the trust, amendments and revocation were authorized during

3    the joint lives of Edward and Marie but not after either of them died.

4        Marie died in 1996, and, notwithstanding the provision precluding

5    amendment after her death, in 1997, Edward executed an amendment to

6    the trust.  The amendment purported to make two changes.  First,

7    Marie's children were removed as co-trustees, and Terence was named as

8    the sole successor trustee upon Edward's death, with Timothy and

9    Deborah serving as successor trustees if Terence was unwilling or

10   unable to serve as trustee.  Second, it altered the distribution

11   scheme.  Like the original trust instrument, the amended trust

12   distributed Edward's firearms to Terence with a one-third equalizing

13   payment to Timothy and Deborah:

14           The Trustee shall apply and distribute the net income and
             principal of each of the shares of the resulting Trust
15           Estate set aside for the benefit of the Trustor's named
             beneficiaries as follows: The Trustee shall distribute
16           Trustor Edward C. Moore's gun collection to Terrence E.
             Moore, Trustor Edward C. Moore's son.  Terrence E. Moore
17           shall repay one third of the fair market value of the gun
             collection to Deborah R. Moore and one third of the fair
18           market value of the gun collection to Timothy E. Moore.

19   But the amendment removed Marie's children from the residuary clause

20   and distributed the corpus of the trust to Terence, Timothy, and

21   Deborah:

22
             The Trustee shall distribute the Rest and Residue of the
23           Trust Estate, consisting of the separate property of Edward
             C. Moore including, but not limited to the family residence
24           located at 482 E. Cleveland Avenue, Porterville, CA, APN
             #253-121-35 and all of Trustor Edward C. Moore's investments
25           to the following named beneficiaries: Terrence E. Moore,
             Trustor Edward C. Moore's son[;] Timothy E. Moore, Trustor
26           Edward C. Moore's son[; and] Deborah R. Moore, Trustor
             Edward C. Moore's son.
27
             It is Trustor Edward C. Moore['s] specific intent that his
28           step-children, namely: Jonna M. Key, Richard A. Elston and

                                    4

Vern E. Elston receive nothing at all from the Trust Estate, since the Trust Estate is all of the separate property of Edward C. Moore.

Edward died in 2006.  At his death, his assets included a bank account, a residence, 49 firearms, and 400 shares of Sturm Ruger stock.  Immediately upon his father's death, Terence assumed the position of trustee.

Within days of his father's death, Terence distributed the firearm collection to himself.  He never made an equalizing payment to the trust or to Deborah or Timothy directly.

In August 2009, Terence moved the 400 shares of Sturm Ruger stock to his personal brokerage account, sold those shares netting $4,815.31, and deposited those funds into his personal account.

Between 2006 and 2011, on at least eight occasions, Timothy inquired of Terence as to the status of the trust.  Terence angrily rebuffed his brother's informal requests for information.  He did not prepare accountings in the years 2006 through 2010.

In 2011, Timothy commenced proceedings in the Fresno County Superior Court to remove Terence as trustee.  Under pressure from his brother, Terence did file an accounting for the trust covering the period from September 16, 2006, through October 31, 2011.  It failed to mention either the Sturm Ruger stock or the proceeds.  The accounting did show cash distributions to Deborah and Timothy of $150,000 each and to Terence of $183,157.75.  Notwithstanding the accounting, the Fresno County Superior Court removed Terence as trustee and replaced him with Timothy.

In 2012, Terence filed a Chapter 7 bankruptcy.  Timothy,

///

///

1    individually and as trustee of the trust,[2] filed an adversary

2    proceeding under 11 U.S.C. § 523(a)(4), proceeding under a defalcation

3    theory, to recover the value of the equalizing payment for the firearm

4    collection and of the 400 shares of Sturm Ruger stock as

5    nondischargeable debts. The matter was tried in December 2013. In

6    early February 2014, each side filed closing briefs, which raised new

7    issues. Timothy sought to amend his pleadings to conform to proof to

8    additionally recover Terence's disproportionate distributions to

9    himself of $33,157.75 under the residuary clause and to include

10   prejudgment interest on the damages for Terence's breaches of

11   fiduciary duty. Terence raised the statute of limitations; Timothy's

12   standing, contending that he had triggered the in terrorem clause

13   resulting in his "automatic" removal as trustee; and exemptions. The

14   court invited reply briefs, which were submitted by each side. Final

15   arguments were made in April 2014.

16                              **JURISDICTION**

17        This court has jurisdiction. *See* 28 U.S.C. §§ 1334, 157(a); 11

18   U.S.C. § 523; General Order No. 182 of the U.S. District Court for the

19   Eastern District of California. This is a core proceeding in which

20   this court may enter final judgment. *See* 28 U.S.C. § 157(b)(2)(I);

21   *Deitz v. Ford (In re Deitz)*, 469 B.R. 11, 17-24 (B.A.P. 9th Cir. 2012)

22   (holding that dischargeability actions are constitutionally core

23   matters, notwithstanding *Stern v. Marshall*, 131 S. Ct. 2594 (2011)).

24   ///

25   ///

26

27        [2] Both a trustee and a beneficiary may assert a claim for damages
28   on behalf of the trust against a former trustee for breaching the
     trust. *See* Cal. Prob. Code § 16420(a)(3).

                                     6

**DISCUSSION**

**I.   Procedural Matters**

    **A.   Amendments to Conform to Proof**

      In certain instances, a party may amend the pleadings to conform to proof. *See* Fed. R. Civ. P. 15(b), *incorporated by* Fed. R. Bankr. P. 7015.

> When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings. A party may move--at any time, even after judgment--to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.

Fed. R. Civ. P. 15(b)(2). Amendment is proper if the nonmoving party consented to trial of the issue and is not be prejudiced by the amendment. *Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1012 (9th Cir. 2004); *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 901 (4th Cir. 1996). Consent may be express or implied. *Freeman v. Chi. Park Dist.*, 189 F.3d 613, 618 (7th Cir. 1999). "To establish implied consent, the [moving party] must demonstrate that [the nonmoving party] understood evidence had been introduced to prove [the new issue], and that [the new issue] had been directly addressed, not merely inferentially raised by incidental evidence." *LaLonde v. Davis,* 879 F.2d 665, 667 (9th Cir. 1989) (citations omitted); *see also Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 814 (9th Cir. 1994).

      In the post-trial briefs and closing arguments, each side raised claims or affirmative defenses not reflected in the pleadings.[3]

---

[3] Neither party has moved to amend the pleadings, but a formal motion is not required. *Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 879 (7th Cir. 2005). Here, the court treats each side's arguments on the issue as a motion to amend the pleadings to conform to proof. *See* Fed. R. Civ. P. 15(b)(2).

1

2

### 1.    Timothy: Excess Distributions under the Residuary Clause[4]

3      Timothy seeks to include Terence's excess distributions of

4  $33,157.75 to himself under the residuary clause as an additional

5  defalcation.  Because he has not shown that Terence expressly or

6  impliedly consented to trial of this new issue, Timothy's motion to

7  amend the pleadings to conform to proof will be denied.  The key is

8  implied consent, which turns on whether Terence understood at the time

9  of trial that a new, previously unpleaded issue was being introduced.

10 At the outset of the trial and in response to inquiries made by the

11 court, the parties narrowly and specifically defined the issues:

12        THE COURT: Do I understand correctly that the portion of the
          trust that is in play, that has brought us here today, is
13        allegedly 49 guns and 200 shares of Sturm, Ruger and Company
          stock?
14
          MR. KRBECHEK [counsel for Timothy]: It's actually 400
15        shares, sir, but it is 49 guns.

16        THE COURT: It is 400 shares?

17        MR. KRBECHEK: Yes, sir.  That's reflected in the pretrial
          submissions that we had made.
18
          THE COURT: Okay.  That's fine.  Let me get to Mr. Reich on
19        this in just a second.  That's in essence the guts of the
          problem.
20
21        . . .

          THE COURT: Mr. Reich?
22

23   ────────────────────

24      [4] Having pleaded a § 523(a)(4) claim that includes a request for
     damages, it was unnecessary for Timothy to separately plead a claim
25   for prejudgment interest.  *See* Fed. R. Civ. P. 54(c) ("Every other
     final judgment [besides a default judgment] should grant the relief to
26   which each party is entitled, even if the party has not demanded that
     relief in its pleadings."), *incorporated by* Fed. R. Bankr. P. 7054(a);
27   *Fed. Sav. & Loan Ins. Corp. v. Tex. Real Estate Counselors, Inc.*, 955
     F.2d 261, 269-70 (5th Cir. 1992) (providing that catch-all prayer for
28   "any other relief" to which the plaintiff is entitled supports award
     of prejudgment interest).

1    MR. REICH [counsel for Terence]: Those are the two issues in
     front of the Court, the one regarding the guns and the other
2    regarding the stock.

3  Trial Tr. 11:11-12:4, Dec. 13, 2013, ECF No. 52; *see also* Trial Tr.

4  55:21-56:5.

5      The linchpin of Timothy's case on the question of

6  disproportionate distributions under the residuary clause is the trust

7  accounting.  But when that document was offered, Timothy indicated

8  that it was offered for impeachment purposes.  Trial Tr. 123:15-

9  124:26, 125:24-130:26.  During trial, the stated purpose for the

10 introduction of the accounting never changed, and the disproportionate

11 distribution was first raised as an additional claim for relief in

12 Timothy's post-trial brief.  *See* Pl.'s Closing Br. 8:1-11:20,

13 Feb. 7, 2014, ECF No. 59.  The court finds that since Terence did not

14 understand that the accounting and his testimony adduced thereunder

15 were being offered to also establish an additional instance of

16 defalcation until nearly two months after the evidence closed, Terence

17 did not impliedly consent to trial of the issue.

18        **2.    Terence: Statute of Limitations**

19     Similarly, Terence's motion to amend his answer to include the

20 statute-of-limitations defenses described in California Probate Code

21 §§ 16061.8 and 16460(a)(2) is denied.  No express consent existed.

22 Morever, the record lacks support for implied consent.  No evidence

23 was offered on the applicability of the statute of limitations, and

24 from that, it follows that Timothy did not understand that Terence was

25 raising an as-of-yet unpleaded issue.

26 ///

27 ///

28 ///

1    **B.    Statute of Limitations**

2        [T]here are two distinct issues to consider in the
         dischargeability analysis: first, the establishment of the
3        debt itself, which is subject to the applicable state
         statute of limitations; and, second, a determination as to
4        the nature of that debt, an issue within the exclusive
         jurisdiction of the bankruptcy court and thus governed by
5        Bankruptcy Rule 4007.

6    *Banks v. Gill Distributions Ctrs., Inc.*, 263 F.3d 862, 868 (9th Cir.

7    2001).  A debt barred by the applicable state statute of limitations

8    will not support a dischargeability action.  *Id.*

9        Here, Terence contends that Timothy's state law claims that form

10   the basis of the adversary proceeding were time-barred by California

11   Probate Code §§ 16061.8 and 16460(a)(2).  The problem is the

12   affirmative defense of the statute of limitations must be pleaded in

13   the answer.  Fed. R. Civ. P. 8(c), *incorporated by* Fed. R. Bankr. P.

14   7008.  In most instances, an affirmative defense is waived if not

15   pleaded in the answer.  *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d

16   1439, 1445 (6th Cir. 1993); *Harris v. Sec'y, U.S. Dep't of Veterans

17   Affairs*, 126 F.3d 339, 343 (D.C. Cir. 1997).  Since Terence did not

18   plead the affirmative defense of statute of limitations, he waived it.

19   **C.    Standing and Real Party in Interest**

20       Terence argues that Timothy lacks standing to pursue an action

21   under § 523(a)(4) and, by extension, is not the real party in interest

22   in this action.  *See Veal v. Am. Home Mortg. Servicing, Inc. (In re

23   Veal)*, 450 B.R. 897, 907 (B.A.P. 9th Cir. 2011); Fed. R. Civ. P.

24   17(a), *incorporated by* Fed. R. Bankr. P. 7017.  Terence's argument

25   progresses in three steps.  First, Timothy triggered the in terrorem

26   clause by seeking Terence's removal as trustee and by pursuing the

27   § 523(a)(4) adversary proceeding.  Second, having triggered the in

28   terrorem clause, Timothy forfeited his status as a beneficiary and his

10

right to serve as trustee.  Third, as a result, Timothy is not a "creditor to whom such debt is owed" within the meaning of § 523(c), the provision which describes standing to pursue a § 523(a)(4) action.

Terence's argument fails because Timothy has not triggered the in terrorem clause.  Except as otherwise provided by law, in terrorem, or no-contest, clauses are enforceable against a beneficiary "who brings a contest within the terms of the no contest clause."  Cal. Prob. Code § 21303.[5]  Such clauses are strictly construed.  Cal. Prob. Code § 21304.  In this case, the in terrorem clause is only activated by the assertion of a claim (1) against the estate, will, or properties of the trust, "other than pursuant to the express terms [of the trust or will];" or (2) disputing the validity of the trust or will.  Here, Timothy's actions in seeking Terence's removal and pursuing this adversary proceeding are not against the trust, will, or trust properties, nor do they seek to invalidate the trust or will.  Rather, these are acts against Terence, occasioned by his failure to follow the express terms of the trust.  Moreover, the no-contest clause specifically excepts from its reach claims asserted pursuant to its express terms.  In this case, Timothy's adversary proceeding seeks to enforce the beneficiaries' interests as defined by the trust's express terms.  As a result, Timothy has not triggered the no-contest clause, and Terence's argument fails.

///

---

[5] A no-contest clause is governed by Part 3 of Division 11 of the California Probate Code.  Because the trust at issue became irrevocable before January 1, 2001, the current version of Part 3, containing California Probate Code §§ 21310-21315, does not apply.  See Cal. Prob. Code § 21315(b).  Instead, the trust is governed by the former, now-repealed version of Part 3, which was previously enumerated at California Probate Code §§ 21300-21308, 21320-21322.  See *Fazzi v. Klein*, 190 Cal. App. 4th 1280, 1283 n.2 (2010).

## II.  Nondischargeability

### A.  Legal Standards

Bankruptcy Code § 523(a)(4) excepts from discharge debts for "defalcation while acting in a fiduciary capacity." To except such a debt from discharge, a creditor must prove by a preponderance of the evidence, *see Lovell v. Stanifer (In re Stanifer)*, 236 B.R. 709, 713 (B.A.P. 9th Cir. 1999), that "'1) an express trust existed, 2) the debt was caused by . . . defalcation, and 3) the debtor acted as a fiduciary to the creditor at the time the debt was created,'" *Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997) (quoting *Klingman v. Levinson*, 831 F.2d 1292, 1295 (7th Cir. 1987) (citing cases)), *abrogated on other grounds*, *Bullock v. BankChampaign, N.A.*, 133 S. Ct. 1754 (2013). Once the creditor has done so, the burden shifts to the debtor to render an accounting. *Id.* at 1462; *see also Pemstein v. Pemstein (In re Pemstein)*, 492 B.R. 274, 280 (B.A.P. 9th Cir. 2013). Terence conceding the first and third elements of *Klingman*, the only issue is defalcation.

Defalcation itself has two elements: The act of defalcation and the wrongful intent. The act of defalcation includes misappropriating trust assets or by failing to account for such assets. *Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186, 1190 (9th Cir. 2001) (citing *Lewis v. Scott (In re Lewis)*, 97 F.3d 1182, 1186 (9th Cir. 1996)). A fiduciary also commits defalcation by using trust property in a manner inconsistent with the duties and obligations imposed by the trust. *See Lovell*, 236 B.R. at 719 (holding that a debtor's violation of the legal duties and obligations under a trust created under both statute and case law constituted a defalcation under § 523(a)(4)).

Wrongful intent requires a culpable state of mind "involving

12

knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock*, 133 S. Ct. at 1757. Reckless conduct qualifies as the equivalent of "actual knowledge of wrongdoing." *Id.* at 1759. A fiduciary's conduct is reckless "if the fiduciary 'consciously disregards' (or is willfully blind to) 'a substantial and unjustifiable risk' that his conduct will turn out to violate a fiduciary duty." *Id.* (quoting Model Penal Code § 2.02(2)(c) (1985)). "That risk 'must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a *gross deviation* from the standard of conduct that a law-abiding person would observe in the actor's situation.'" *Id.* at 1760 (quoting Model Penal Code § 2.02(2)(c)).

**B.    Firearm Collection Equalizing Payment**

Timothy has sustained his burden of proof on the issue of defalcation with respect to the equalizing payment for the firearm collection. "If a trust has two or more beneficiaries, the trustee has a duty to deal impartially with them and shall act impartially in investing and managing the trust property, taking into account any differing interests of the beneficiaries." Cal. Prob. Code § 16003. To the same effect, "[t]he trustee shall administer the trust with reasonable care, skill, and caution under the circumstances then prevailing that a prudent person acting in a like capacity would use in the conduct of an enterprise of like character and with like aims to accomplish the purposes of the trust as determined from the trust instrument." Cal. Prob. Code § 16040.

Here, the trust required Terence, as the beneficiary, to make an equalizing payment of two-thirds of the value of the firearms in

13

exchange for their receipt and also required Terence, as the trustee,
to collect that payment on behalf of the other beneficiaries:

> The Trustee shall distribute Trustor Edward C. Moore's gun
> collection to Terrence E. Moore, Trustor Edward C. Moore's
> son.  Terrence E. Moore shall repay one third of the fair
> market value of the gun collection to Deborah R. Moore and
> one third of the fair market value of the gun collection to
> Timothy E. Moore.

As trustee, Terence distributed the gun collection to himself, the
beneficiary, without collecting the equalizing payment, which violated
his duties of impartiality and prudence.

Terence had actual knowledge that his conduct with respect to the
firearm collection was improper.  *Bullock,* 133 S. Ct. at 1757 (stating
that culpable state of mind includes "knowledge of . . . the improper
nature of the relevant fiduciary behavior").  Most importantly,
Terence knew that the terms of the trust obligated him to collect a
payment of two-thirds the value of the firearms collection in exchange
for the firearms collection.  And Terence, as the trustee, knew that
he, as the beneficiary with the payment obligation, had the ability to
make this payment.  He received the guns within a few days of Edward's
death on September 16, 2006.  By his own estimate, the high iteration
of the fair market value of the collection was $17,186, making the
equalizing payment $11,457.33.  His accounting shows that on September
20, 2006, he received $75,000 from his father's estate.  In the five
years following his father's death, Terence received a total of
$183,157.75 in cash from his father's estate.  Despite knowing that he
had the means to make the equalizing payment, Terence, as the trustee,
never attempted to collect the equalizing payment on behalf of the
other beneficiaries.  Knowledge of the obligation, the passage of
time, and knowledge of his ability to perform give rise to the

14

1  inference that Terence made a conscious decision to violate his
2  fiduciary duties.

3       Further facts showing actual knowledge that his actions were
4  improper include Terence's delayed administration of the trust for
5  more than five years coupled with refusal to provide information to
6  Timothy when asked.  During that time, his brother Timothy made
7  informal requests for information eight times.  In response, he was
8  told "[i]t was none of [his] ******* [expletive deleted] business" and
9  "It's none of your business.  I'm handling it.  There's nothing you
10  need to know.  I'm the trustee.  I'll get around to it.  I haven't
11  done that yet."  Trial Tr. 142:5-13.  Until forced to do so by his
12  brother, Terence failed to file an accounting for the estate, from
13  which third parties could have detected the failure to collect the
14  equalizing payment.  The refusal to provide information suggests that
15  Terence was attempting hide his refusal to perform.

16       The court finds that Terence knew of his obligations under the
17  trust and knew that his failure to collect the equalizing payment from
18  himself was improper but made a conscious decision not to do so.  As a
19  result, Terence committed a defalcation with respect to the equalizing
20  payment for the firearm collection.

21       C.   **400 Shares of Sturm Ruger Stock**

22       Timothy has sustained his burden of proof on the issue of
23  defalcation with respect to the 400 shares of Sturm Ruger stock.
24  Terence breached his fiduciary duty by moving the Sturm Ruger stock
25  from his father's account to his own, selling it, and retaining the
26  proceeds.  *See* Cal. Prob. Code § 16003 (duty of impartiality).
27  Unlike the firearm collection, the stock was governed by the residuary
28  clause.  The conversion of trust assets, which should have been

15

divided between all three sibling beneficiaries, to Terence's own personal use is a breach of his fiduciary duties.

Terence's actions show that at the very least he consciously disregarded a substantial and unjustifiable risk that retention of the stock proceeds violated his fiduciary duty--and probably had actual knowledge that retention of the proceeds was improper.  This is well demonstrated by these facts.  At the outset, the residuary clause of the trust specifically and unequivocally provides that the stock, not otherwise provided for in the trust, should have passed to each of the residuary beneficiaries.  Terence admits reading each document dozens of times, from which he is charged with knowledge of their terms. Further, the appropriation of trust assets for personal use, without sufficient explanation, is a gross deviation from the conduct a law-abiding person would observe.  That Timothy was unaware of the existence of the stock suggests a greater than ordinary chance that the appropriation would not be detected.  As with the equalizing payment for the firearm collection, Terence refused to provide information for five years and when the accounting was filed it omitted the Sturm Ruger stock.  These facts suggest an intention to hide the transaction and, from that, a knowledge of its impropriety. For each of these reasons, the court finds that Terence knew of his obligations under the trust and knew that his appropriation of the stock was improper.  As a result the burden of proof shifts to Terence to render an accounting.  *Otto,* 106 F.3d at 1462; *see also Pemstein,* 492 B.R. at 280.

But Terence has not sustained his burden.  He suggests the stock was sold to reimburse himself for expenses.  Yet, the only accounting he has provided is, by his own words, incomplete and inaccurate.

1  Moreover, the court finds this explanation not credible in light of

2  the trust's other cash assets.

3      As a result, Timothy has carried his burden of proof establishing

4  Terence's defalcation in failing to collect the equalizing payment for

5  the firearm collection and misappropriating the 400 shares of Sturm

6  Ruger stock.

7  **III.  Damages**

8      **A.    Legal Standards**

9      In a § 523(a)(4) action, the amount of the nondischargeable debt

10  (i.e., the damages) is determined by state law.  *See Roussos v.*

11  *Michaelides (In re Roussos)*, 251 B.R. 86, 93 (B.A.P. 9th Cir. 2000),

12  *aff'd*, 33 F. App'x 365 (9th Cir. 2002).  Under California law, a

13  trustee who commits a breach of trust is typically liable for the

14  "loss or depreciation in value of the trust estate resulting from the

15  breach of trust."  Cal. Prob. Code § 16440(a)(1).

16      Prejudgment interest may also be awarded.  *See Cobe v. Smith (In*

17  *re Cobe)*, 229 B.R. 15, 18 (B.A.P. 9th Cir. 1998) (citing *Cohen v. de*

18  *la Cruz*, 523 U.S. 213, 218-23 (1998)).  "In the context of a

19  § 523(a)(4) proceeding, it has been held [by the Ninth Circuit] that

20  it is proper for the bankruptcy court to apply *state law* to calculate

21  prejudgment interest into the amount of the nondischargeable debt."

22  *Roussos*, 251 B.R. at 94 (emphasis added) (citing *Otto*, 106 F.3d at

23  1463); *accord Otto*, 106 F.3d at 1463 ("Because the debt the court

24  found to be nondischargeable arose under state law, the award of

25  prejudgment interest on that debt is also governed by state law."

26  (citation omitted)).  California law provides for interest at 10% per

27  annum.  *See* Cal. Prob. Code §§ 16440(a)(1), 16441(a)(1); Cal. Civ.

28  Proc. Code § 685.010(a); *Uzyel v. Kadisha*, 188 Cal. App. 4th 866, 921

1  (2010). Interest "begins to accrue on the date of the loss or
2  depreciation in value," *Uzyel*, 188 Cal. App. 4th at 923 n.42, and
3  continues to accrue even after the petition is filed, *see Foster v.*
4  *Bradbury (In re Foster)*, 319 F.3d 495, 497 (9th Cir. 2003) (per
5  curiam) (nondischargeable child support debt); *Ward v. Bd. of*
6  *Equalization (In re Artisan Woodworkers)*, 204 F.3d 888, 891-92 (9th
7  Cir. 2000) (nondischargeable tax debt); *Great Lakes Higher Educ. Corp.*
8  *v. Pardee (In re Pardee)*, 218 B.R. 916, 921 (B.A.P. 9th Cir. 1998)
9  (nondischargeable student loan debt), *aff'd*, 193 F.3d 1083 (9th Cir.
10 1999).  Thus, prejudgment interest in a nondischargeability proceeding
11 is calculated through the date of judgment. *See DeVries v. Clark (In*
12 *re Clark)*, Bankr. No. 12-00649-TLM, Adv. No. 13-06034-TLM, 2014 WL
13 174935, at *5 (Bankr. D. Idaho Jan. 10, 2014).

14      **B.    Firearm Collection Equalizing Payment**

15      As to the equalizing payment for the firearm collection, the
16 trust provides for two-thirds of the fair market value of the
17 collection.  The court believes that term is defined by the fair
18 market retail value, after discounting the firearms for condition but
19 without costs of sale, and determines that amount to be $17,186.  As a
20 result, the two-thirds payment due to Timothy, as trustee, is
21 $11,457.33.  Interest on this amount is $8,989.82.[6]  As a result, the
22 aggregate due for the defalcation with respect to the firearm
23 collection equalizing payment is $20,447.15.

24 ///

25 _____

26      [6] On the debt owed with respect to the equalizing payment,
   interest accrues at a rate of $3.14 a day ($11,457.33 principal x 10%
27 annual interest rate ÷ 365 days).  Interest accrues from September 16,
   2006, through July 18, 2014, or 2,863 days.  As of July 18, 2014, the
28 total amount of prejudgment interest is $8,989.82 ($3.14 daily
   interest x 2,863 days).

C.    **400 Shares of Sturm Ruger Stock**

As to the 400 shares of Sturm Ruger stock, the net amount Terence realized was $4,815.31, which is the proper measure of damages. Interest on this amount is $2,377.32.[7] As a result, the aggregate due for the defalcation with respect to the Strum Ruger stock is $7,192.63.

CONCLUSION

For each of these reasons, judgment shall be entered for Timothy E. Moore in his capacity as trustee and beneficiary of the Edward C. Moore and Marie Moore Family Trust dated November 12, 1992, and against Terence Edward Moore in the amount of $27,639.78.[8] Counsel for Timothy E. Moore shall prepare and lodge a judgment consistent with the findings herein.

Dated: July 18, 2014

Fredrick E. Clement
United States Bankruptcy Judge

---

[7] On the debt owed with respect to the Sturm Ruger stock, interest accrues at a rate of $1.32 a day ($4,815.31 principal x 10% annual interest rate ÷ 365 days).  Interest accrues from August 13, 2009, through July 18, 2014, or 1,801 days.  As of July 18, 2014, the total amount of prejudgment interest is $2,377.32 ($1.32 daily interest x 1,801 days).

[8] This is comprised of $20,447.15 and $7,192.63.  Prejudgment interest has been computed only until July 18, 2014.  As a result, the judgment may include interest from July 19, 2014, through the date of entry of judgment, at the rate of $4.46/day ($3.14/day for firearm equalizing payment + $1.32/day for Sturm Ruger stock).

19

**Instructions to Clerk of Court**
**Service List**

The Clerk of Court is instructed to send the Order/Judgment or other
court generated document transmitted herewith to the parties below.
The Clerk of Court will send the Order via the BNC or, if checked
__X__, via the U.S. mail.

     Debtor(s), Attorney for the Debtor(s), Bankruptcy Trustee (if
appointed in the case), and ___X_____ Other Persons Specified Below:

Randolf Krbechek, Esq.
9477 N. Fort Washington Road, #104
Fresno, CA 93730

Terence Edward Moore
1572 W. Fir Ave.
Fresno, CA 93711

Office of the United States Trustee
2500 Tulare Street
Suite 1401
Fresno, California 93721